LYDIA P. BULLOCK

*v.*

WINFIELD S. ANGLEMAN.

[Decided July 8th, 1913.]

1. A court of equity has jurisdiction to compel a trustee to pay funds into court to await final disposition, where the relationship of the parties is that of trustee and *cestui que trust,* and the exercise of the power is not relaxed because the trustee has misappropriated the fund.

2. Where an attorney, having collected a mortgage for his client, after receiving his fees, failed to pay over the balance, and attempted to make himself his client's debtor by executing a note to her therefor with a chattel mortgage, securing the same, he did not thereby escape the obligations, incident to his relation as attorney to pay over the fund, but would be summarily ordered to make payment forthwith, together with the costs of the proceeding and a counsel fee to indemnify his client for the expenses incident thereto.

Heard on bill, answer and affidavits.

*Mr. George W. V. Moy,* for the complainant.

*Mr. Winfield S. Angleman,* defendant, *pro se.*

WALKER, CHANCELLOR.

Upon the filing of the bill of complaint, which prayed for answer on oath, the defendant was ordered to show cause on December 31st, 1912, why *pendente lite* the trust funds in his hands should not be paid into court. On the return of the order he filed his answer verified both in common form and *in extenso,* and asked leave to put in addition proof by way of affidavit at an adjourned day. This leave was granted, with the admonition that the hearing would be a summary one, as the controversy was between client and solicitor, in which the client averred that she had been defrauded and oppressed by her solicitor. The defendant acknowledged the court's power to so

proceed and filed an additional affidavit and went to hearing accordingly.

The bill charges and the answer admits, that the complainant placed with the defendant, her solicitor, a member of the New Jersey bar, a mortgage of $4,000 for collection. At the same time the mortgage was under foreclosure in a suit in this court to enforce a prior encumbrance. The defendant was authorized to accept a compromise and did so, receiving in settlement of the complainant's mortgage debt $3,500, which he failed to pay over to her, although frequently importuned to do so. The bill prays an accounting and a decree for the money. Hearing was had upon bill, answer and affidavits submitted by both sides, and the cause is now ripe for a final decree terminating the litigation.

The proofs show that the defendant had for years been the confidential adviser of the complainant. As far back as 1899 he had drawn and she executed a testament making him her chief and residuary beneficiary, although they were not of kin. This, it seems, first came to the complainant's attention at the time she severed her relations with the defendant because of his present misconduct. That the execution of the will was surreptitiously procured may be inferred, but if it were not, it manifests the implicit confidence which the complainant reposed in her solicitor.

The defendant collected the money now in question in December, 1910, and deposited it to his own credit. Three months afterwards the complainant learned this from an outside source, and at once made demand for its payment. The defendant sought to persuade her that he had retained the money with her consent, and he sets up that she told him to "keep the money and pay her the interest on it." Failing to impress his client, as he admits in his answer, he offered to "assume full responsibility for the entire value of the mortgage" ($4,000), and promised restitution as soon as he could make arrangements. Repeated demands, and threats of disbarment proceedings, resulted in the defendant, on March 16th, 1912, giving his promissory note to the complainant, payable in three months, for $3,545, secured by a chattel mortgage on his law library. This sum

represented the amount collected, plus the interest to that time, less a $200 collection fee, which had been previously agreed upon. On July 8th following the defendant gave to the complainant a check for $207.47, interest on the net amount of collections from December 1st, 1910, to date, and endeavored to obtain a receipt to be executed by the complainant, acknowledging him as her debtor, which she refused to sign.

The defendant now claims that because of the acceptance of the note and mortgage his trust relations changed into that of debtor and creditor, and submits himself to a money decree in that capacity. I cannot regard him in that light. He received the money in trust, and the note and mortgage taken by the complainant, after unsuccessful efforts to compel the defendant to disgorge, are cogent evidence of his defalcation. The proofs are convincing of the defendant's abuse of his client's confidence, and that he, with intent, appropriated her money to his use. The defendant's explanation for withholding the money is too diaphanous for serious consideration; for why should he, when confronted with the evidence of his peculation, offer to return not only the money he had collected, but also the difference to the full amount of the mortgage debt. This, to my mind, evinces a consciousness of guilt and renders his assertion that the fund was loaned to him incredible.

The jurisdiction of a court of equity to compel a trustee to pay trust funds into court to await final disposition, where the relationship of the parties is that of trustee and *cestui que trust,* is firmly established, and the exercise of this power is not relaxed, even though the trustee misappropriated the fund. All that need appear is that the answer admits the trust estate and the complainant's title thereto. Whether the trust relation was changed into another may be ascertained from proof in the cause. *Dan. Ch. Pl. & Pr.* *1770* exploits this subject. See also *McTighe and Wadleigh* v. *Dean, 22 N. J. Eq. (7 C. E. Gr.) 81.*

As I find that there was no novation and that the defendant holds the funds in trust, an order would be made that he pay into court the sum of $3,300, the net amount of the trust fund in his hands; but, because it is plainly apparent that the order

will not rest alone upon the trustee doctrine, strictly speaking, but upon that of solicitor and client also, the sum mentioned will be ordered paid to the complainant forthwith.

In *Lynde* v. *Lynde, 64 N. J. Eq. (19 Dick.) 736,* an order was made directing the respondent, James Westervelt, a solicitor of this court, to pay forthwith into the hands of the clerk in chancery the entire sum collected by him, $38,500 (after making certain specified deductions), and upon payment being made the court would then proceed in a summary way to ascertain what was reasonable compensation for his professional services, &c. *64 N. J. Eq. (19 Dick.) 759.* Mr. Justice Pitney, speaking for the court of errors and appeals, said that the fundamental ground upon which the jurisdiction invoked rests, is that attorneys and solicitors are officers of the respective courts and are a part of the machinery of the law created for the administration of justice; that it is upon that ground that when an attorney or solicitor has received moneys which duty required him to pay over to his client, the court, if necessary, exercises its summary, disciplinary and punitive powers to require the attorney or solicitor to do justice to his client; and (at *p. 746*) that this summary jurisdiction is not confined to matters arising out of litigation, but extends to any case where the employment is so connected with professional character as to afford presumption that that character formed the ground of employment by the client.

In the *Lynde Case* the order was that the solicitor forthwith pay the fund into court because proceedings were to be had to ascertain what was reasonable compensation for his professional services. Not so in the case *sub judice.* This defendant has been paid his fee agreed upon for collection, and he has converted to his own use and retained the balance of his client's money. In this posture of the affair, the matter having been fully tried out between the parties on a summary hearing, a decree will be made on the solicitor to make payment to his client forthwith. The complainant is entitled to costs, with a counsel fee of $250 to be included therein. The costs, including counsel fee, to be paid forthwith along with the amount decreed to the complainant.